**Donna FREEMAN, Gloria McDowell, Mary Lou Chapel, Deborah Gritter, Marilyn Kuiper, and Linda Prantel, Plaintiffs,**

v.

**KELVINATOR, INC., Defendant.**

Civ. A. No. 572314.

United States District Court, E. D. Michigan, S. D.

May 1, 1979.

Jean L. King, Ann Arbor, Mich., for plaintiffs.

Jack B. Combs and Edward Malinzak, Warner, Norcross & Judd, Grand Rapids, Mich., Thomas H. Barnard and Timothy J. Sheeran, Squire, Sanders & Dempsey, Cleveland, Ohio, for defendant.

## OPINION

FEIKENS, District Judge.

On January 19, 1979 I granted Plaintiffs leave to amend their complaint to include a prayer for compensatory and exemplary damages under the Michigan Elliot-Larson Civil Rights Act, M.C.L.A. § 37.2101 *et seq.* Plaintiffs submitted a proposed amendment. Defendant opposes paragraphs "BB" and "CC" and requests I deny their addition to the complaint.[1]

Defendant's motion could be denied under Rule 12(g) of the F.R.Civ.P. which requires all grounds for a motion to be joined. Defendant has previously argued that plaintiffs should not be allowed compensatory damages under state law. However, plaintiffs have not argued this, and I decline to decide on that ground.

Defendant argues that the damages plaintiffs seek—for the indignity of discrimination, humiliation and the invasion of their right not to be discriminated against—are barred by the exclusive remedy provision of the Michigan Worker's Disability Compensation Act (MWDCA), M.C.L.A. §§ 418.131 and 418.301.

1. Paragraph "AA", dealing with monetary losses under Title VII, and paragraphs 100 through 105, containing new factual allegations, are not opposed. The interests of justice would be served by these amendments so they will be allowed. Rule 15(c) F.R.Civ.P.

Section 418.301 provides:

(1) An employee who receives a personal injury arising out of and in the course of his employment by an employer who is subject to the provisions of this act, at the time of such injury, shall be paid compensation in the manner and to the extent provided in this act . . .

Section 418.131 says, in part:

[t]he right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer . . .

Defendant claims the damages claimed in "BB" and "CC" result from personal injuries as defined in the MWDCA. It argues that mental injuries caused by even nonphysical stimuli are covered by worker's compensation, and concludes that because both exemplary and compensatory damages are sought for mental injury or distress, the MWDCA's exclusivity provision applies. Defendant emphasizes that exclusivity is determined by whether the injuries are covered and not by whether compensation will be paid.

Defendant's argument is entirely misconceived. The MWDCA was designed to redress "industrial injuries" sustained from "trade risks relating to the industry". *Milton v. Oakland County,* 50 Mich.App. 279, 283, 213 N.W.2d 250, 252 (1973). In *Sheppard v. Michigan National Bank,* 348 Mich. 577, 83 N.W.2d 614 (1957), the court noted that American acts cover what the English called "injury by accident," in an industrial context.

The Worker's Compensation Act was the culmination of a struggle against the debilitating societal problem of industrial injuries that went unredressed as a result of such discredited doctrines as the "fellow-servant rule" and contributory negligence. *Crilly v. Ballou,* 353 Mich. 303, 91 N.W.2d 493 (1958). Being a remedial statute, it has been broadened by interpretation to provide benefits to workers whose injuries are intangible mental injuries—even when they are the result of nonphysical causes. *Ritter v. Allied Chemical Corp.,* 295 F.Supp. 1360 (D.S.C.1968); 2A, *A. Larson, Workmen's Compensation Laws,* § 68.34. But it would be

wrong to plunge headlong to the conclusion that all "injuries" in any form whatsoever are recoverable only under the MWDCA. Just because mental damages from accidental industrial injuries are compensable does not mean mental injuries from other sources must unthinkingly be barred by the exclusivity provision.

The Civil Rights Act was the culmination of a long fight against another great evil in our society: discrimination. The evils at which it aims are entirely different from those of the compensation statute. The civil rights law aims at the prejudices and biases one race or sex bears against another. It is designed to abolish the smallness of mind that clings to pernicious stereotypes founded not on fact but upon historical misconceptions and fear. Its purpose is to guarantee equal opportunity in the marketplace and redress the injuries that those in protected groups suffer. Now defendant would pit one great remedial statute against the other and both against the plaintiffs, barring their recovery. Such a result cannot be countenanced. The two schemes—MWDCA and the Civil Rights Statute—were aimed at separate and distinct problems. There is no indication whatever that the discrimination law was to have an exception for injuries arguably redressed by the MWDCA, nor is there any indication that the MWDCA was impliedly expanded when the Civil Rights Act was passed.

The source of defendant's misconception is perhaps its belief that the injury which flows from discrimination is akin to mental injuries sustained by workers from compensable sources. It is not. The discrimination injury is unique. Its source is deliberate or inadvertent disregard by the employer of the fundamental rights of his employees. M.C.L.A. § 37.2101 *et seq.* Likewise, though the victim of discrimination may feel embarrassment, humiliation, outrage and disappointment, thus likening the injury to those of "dignitary" torts such as defamation, it would be wrong to equate the two. Note, *Developing "Tort" Standards for the Award of Mental Distress*

*Damages in Statutory Discrimination Actions,* 11 U.Mich.J.L.Ref. 122, nn. 1, 2 & 3 (Fall 1977).

To illustrate the error in what defendant proposes, consider the result if a class action like this one was brought under the MWDCA. First, the Hearing Referee and the Appeals Board would be unable to handle the case. Second, the case would be dismissed because the plaintiffs do not allege any disability. Although the injury might be covered, no compensation would be paid. The MWCDA does not provide any remedy for the injuries at issue.

This failure of the *quid pro quo* basis of worker's compensation is a good reason not to remit plaintiffs to the Bureau. A similar situation was presented in *Ritter v. Allied Chemical Corp., supra.* There the plaintiff suffered mental injuries resulting from an assault by his superior. The court refused to apply the exclusivity provision of South Carolina's worker's compensation law, stating:

> The mere fact that the employer and employee are subject to the act does not deprive them of their common-law remedies if conditions in the case place it outside the scope of the act, as, for example, where the injury suffered was not caused by an accident or did not result in disability. 295 F.Supp. at 1362.

Thus, though defendant argues that exclusivity of the MWDCA is governed by whether the injury is covered, the fact that an injury is not compensable weighs strongly against confining an injured party to that remedy.

This principle is more fully illustrated by *Milton v. Oakland County,* 50 Mich.App. 279, 213 N.W.2d 250 (1973). There the plaintiff sued his employer claiming his rights under a merit system had been violated. He sought damages for mental anxiety and for the disabling nervous condition he said resulted. Defendant argued that the MWDCA provided the plaintiff's exclusive remedy. The court concluded that only a "cursory review" of the MWDCA was necessary to reject defendant's argument insofar as it pertained to the mental an-

guish resulting from defendant's alleged violation of plaintiff's merit system rights. Conceding that recovery for disability could be had only under the MWDCA, the court said "[i]t is beyond question that plaintiff's claims [of mental distress for the violation of the merit system] if proved, cannot be classified as industrial injuries within the meaning of the Workmen's Compensation Act. While plaintiff's alleged injuries for muscle fatigue and mental depression fall within the act and are in that respect his exclusive remedy, plaintiff has a right to judicial review of his claims for additional compensation, improper discharge, and violation of the merit-system rules." *Id.* at 284, 213 N.W.2d at 252. The court concluded:

> "the exclusive-remedy bar [is] inapplicable when the challenged injury is not . . . compensable under the act . . . . Plaintiff attempted to allocate his claims appropriately between his workmen's compensation action and civil action. The mere fact that the compensation remedy was sought simultaneously cannot destroy the separate identity of his contractual rights for which no compensation could be awarded. Plaintiff's damage claims fell outside the purview of the apparent scope of the act." *Id.,* at 284–5, 213 N.W.2d, at 252–253.

The reasoning of *Milton* applies with even greater force to an employer's attempt to relegate a claim of discrimination to the Bureau.

Subsequent cases have affirmed this position. *Broaddus v. Ferndale Fastener,* 84 Mich.App. 593, 597–600, 269 N.W.2d 689 (1978) (Workmen's Compensation Act no bar to claim of emotional distress for intentional withholding of Workmen's Compensation benefits); *Szydlowski v. General Motors,* 59 Mich.App. 180, 182, 229 N.W.2d 365, 367 (1975) (suit is not barred when "other than personal injuries are involved"). See also *Sullivan v. United States,* 428 F.Supp. 79, 81 (E.D.Wis.1977) (denying government's claim that 39 U.S.C. § 1005(c) was exclusive remedy for employee who claimed discrimination in employment). An earlier

case is, *Moore v. Federal Department Stores, Inc.,* 33 Mich.App. 556, 190 N.W.2d 262, *leave denied,* 385 Mich. 784 (1971). See 2A, *A. Larson, Workmen's Compensation Laws,* § 68.34.[2]

The most troubling aspect of defendant's argument is the case law it cites on the same or very closely related issues. The exclusivity bar of the MWDCA in the discrimination context first appeared in *Stimson v. Bell Telephone Co.,* 77 Mich.App. 361, 258 N.W.2d 227 (1977). There the plaintiff sued under the old civil rights statute, M.C.L.A. § 423.301 *et seq.,* charging that Bell's sex discrimination against her had caused a nervous breakdown for which she required hospitalization, as well as embarrassment and loss of esteem. She shortly thereafter filed with the Bureau of Worker's Compensation seeking relief for an "acute nervous and mental breakdown." The court observed:

> Generally, non-physical torts, such as false imprisonment or sex discrimination, fall outside the scope of an exclusive-remedy provision . . . ,

but then explained:

> Certain elements of damages in an action for non-physical tort may nevertheless be barred in this state because the type of damages claimed are those for which workers' compensation is provided. *Id.,* at 366, 258 N.W.2d, at 231.

The court concluded with this statement:

> Plaintiffs' complaint in the present case alleges a cause of action which generally concerns a type of injury outside the scope of the Workers' Disability Compensation Act. The mental injuries allegedly suffered by plaintiff, however, are not merely incidental to the violation of her civil rights. They culminated in a disabling condition for which compensation was available. Plaintiffs' ability to recover for Mrs. Stimson's nervous breakdown, embarrassment, humiliation and

loss of esteem among her peers, therefore, is barred by M.C.L.A. 418.131; M.S.A. 17.237(131). Plaintiff's discharge and her inability to obtain grade and wage promotions, however, if proven to have resulted from sexual discrimination, are injuries for which the act provides no remedy. With regard to these injuries, plaintiff is entitled to a trial on the merits. *Id.,* at 369, 258 N.W.2d, at 232. [footnotes omitted]

Thus, the court's holding was that where humiliation and embarrassment *culminate* in disability, then worker's compensation is the exclusive remedy. The court did not address the question of exclusivity when injury does not culminate in disability. And, indeed, all the indications in the case are that without disability, exclusivity would not apply. Witness the court's approval of the holding in *Moore v. Federal Department Stores, Inc., supra,* where the MWDCA did not bar a tort action for false imprisonment, and the court said:

> [W]e agree . . . plaintiff's claim that her humiliation, embarrassment, and deprivation of personal liberty are not the type of "personal injury" contemplated in the above-quoted section [of the MWDCA]. *Id.,* at 365, 258 N.W.2d, at 230.

The court also emphasized that the only distinction between *Moore* and the one at bar was the difference in the harm suffered. When the harm is solely mental and flows from non-physical causes, the court said, "[t]he suit should not be barred" (quoting 2A, *A. Larson, Workmen's Compensation Laws,* § 68.34, pp. 13.31–32). I therefore conclude it was the physical disability for which Plaintiff Stimson claimed that led the court to hold the MWDCA her exclusive remedy. I do not believe the court intended its holding to go beyond that to encompass cases where only mental distress damages are sought.[3] *Stimson* does not support defendant.

---

2. In discussing exclusivity of workmen's compensation, Larson notes another reason not to relegate the plaintiff to the compensation bureau; discrimination is not accidental. Work-

men's compensation is designed to compensate accidents. *Id.*

3. The really troubling aspect of this case is that the court took pains to distinguish the *Moore*

Defendant also relies heavily on *Schroeder v. Dayton-Hudson Corp.,* 456 F.Supp. 652 (E.D.Mich.1978). In that case plaintiff instituted suit for her discharge on ten theories of liability ranging from age discrimination under 29 U.S.C. § 621 *et seq.,* to intentional infliction of emotional distress. She claimed she had been hospitalized as a result of the way the defendant treated her. Judge Kennedy reasoned that "the sort of damages claimed rather than . . . the elements of the tort" should determine when exclusivity should apply, *id.,* at 653 (citing *Stimson* ), but then held: "the plaintiff's only remedy for her mental and physical disabilities is the Worker's Compensation Act, and she is precluded from maintaining this civil action with respect to her claim for intentional infliction of emotional distress." [4]

It appears that Judge Kennedy did the same thing as the court in *Stimson:* she found that the presence of a disabling injury operated to bar the entirely separate mental distress claim. One possible rationale for this might have been that the mental distress claim "merged" with the physical disability claim. Another might be that the existence of a remedy for the physical injuries obviated the need for any additional remedy by way of a civil suit. The problem is that just as in *Stimson,* the language of the holding is either broader than the facts call for (it dismisses the claim but is not explicit that the dismissal is only because there is a disability), or it implicitly incorporates the merger or obviation rationales I outlined. If the former, then the holding of the case does not address the issue here; if the latter, I decline to accept it. To dismiss the mental distress claim on the basis that the injured person is covered by the MWDCA is to put the cart

before the horse. Even if the disability is compensable, the mental distress that preceded it is not and should not be dragged to the Bureau along with the disability claim. This is exactly the distinction Judge Bronson noted in *Milton, supra,* and I conclude it should be observed, here, notwithstanding subsequent cases' failure to do so.

The most troublesome case of all is *Branham v. Massey Ferguson, Inc.,* Civ. No. 76–70345 wherein on 1/9/78 Judge Churchill held that even absent physical disability, the plaintiff's claims for "mental anguish, anxiety, humiliation and embarrassment" in a sex discrimination case were barred by the MWDCA. For the reasons stated, I simply cannot agree.

When the Elliot-Larson Act was passed, there was no indication that the legislature intended an implied exception for the MWDCA or its predecessor. The legislature never considered the argument raised in *Stimson.* I can only conclude that though the legislature might agree with *Stimson* on its facts, it would be dismayed at the proposition on whose behalf it is now urged: namely, that the legislative scheme designed to remedy centuries of injustice, the product of the racial unrest of the 1960's, would be undercut in even the slightest degree by the MWDCA. The movement in that direction begun unwittingly by *Stimson* should be halted.

 The more difficult question is whether the damages sought are recoverable under the Civil Rights Act. The parties have tended to confuse this with the exclusivity issue. They should be kept separate.

I have already held in my earlier opinion that compensatory damages and their exemplary component may be recovered for

---

situation from the one at bar, but then dismissed both the physiological and purely mental aspects of the claim in one stroke. Whereas this might be appropriate if the mental suffering was the result of the physical injury, it seems questionable where the mental suffering causes the physical injury. In the latter case, the mental injuries seem to have a life of their own and should be recompensed. *Milton, supra.* I attribute the court's sweeping dismissal

as a momentary lapse from the thoughtful analysis which preceded it rather than as a repudiation of it. I adopt the court's reasoning and thus slightly narrow the holding.

4. Professor Larson says that he has seen no other case where the workers' compensation laws have barred claims for the intentional infliction of emotional distress. 2A, *A. Larson, Workmen's Compensation Laws,* § 68.34.

the indignity and anguish of discrimination under M.C.L.A. § 37.2101 *et seq.* This conclusion was based partly on the Act's language. Section 37.2801 provides: "(1) A person alleging a violation of this act may bring a civil action for appropriate injunctive relief or damages or both." Subsection (3) says " 'damages' means damages for injury or loss caused by each violation of this Act . . ." I reasoned that "loss" seems to contemplate pecuniary losses in the form of lost opportunity and back pay. The inclusion of "injury" indicates that additional recovery should be possible for any damages in excess of pecuniary loss. I also thought this a just result in light of the broad remedial purpose of the Act. As anyone who has been the victim of discrimination can attest, the wounds run deeper than the pocketbook.

A final point relates to something said by Justice Marshall in *Curtis v. Loether,* 415 U.S. 189, 196 n. 10, 94 S.Ct. 1005, 1009 n. 10, 39 L.Ed.2d 260 (1974).

> An action to redress racial discrimination may . . . be likened to an action to defamation or intentional infliction of mental distress. Indeed, the contours of the latter tort are still developing, and it has been suggested that "under the logic of the common law of insult and indignity, racial discrimination might be treated as a dignitary tort." [citation omitted]

But simply because the law of tort might be a source to evaluate the loss caused by discrimination does not necessarily mean discrimination claims should be saddled with the whole of tort doctrine. The discrimination cause of action is unique. It is not derived from the English common law of personal freedom, but is rather an outgrowth of the fundamental principle that everyone should be treated equally without regard to race, color or, as we have come to realize more recently, sex.

The states have much to learn in terms of evaluating the nature and shape of the discrimination cause of action. Tort law may have much to contribute to this endeavor. But it does not pre-empt discrimination causes of action and should not swallow them whole, either directly or by the subterfuge of the MWDCA's exclusivity provision.

### CONCLUSION

Defendant has seized upon two cases, *Stimson* and *Schroeder,* containing dicta that mental distress damages for discrimination claims must be recovered under MWDCA, and seeks to catapult them into a full-fledged, well-thought rule of Michigan law. They are not. They are, rather, cases whose language is broader than the facts. And, a close reading shows no evidence they apply beyond their facts. Instead, we should keep in mind the analysis of *Milton* and *Moore,* which points clearly the way through the difficulties at hand. To apply *Stimson* and *Schroeder* to the instant facts would produce an incongruous result. Two important remedial statutes would cancel each other. Neither law nor logic supports such a conclusion. Accordingly, defendant's motion is denied and an appropriate order is entered herewith.