PACHECO v CLIFTON

Docket No. 47531. Submitted February 17, 1981, at Detroit.—Decided
September 21, 1981. Leave to appeal applied for.

Frederick Pacheco, Jr., and Cynthia Pacheco, his wife, filed an
action for damages in Wayne Circuit Court against Clayton
Clifton and Bruce Jellison, employees of General Motors Corpo-
ration, and the corporation itself alleging discrimination on the
basis of national origin pursuant to the provision of the now-
repealed Michigan fair employment practices act. Pacheco, a
security guard at General Motors Corporation, alleged that he
suffered serious psychological and emotional injuries, neurosis,
loss of former job pleasure, loss of consortium and great pain
and suffering as a result of employment discrimination based
upon his Spanish-American origin. Pacheco's wife alleged that
as a result of the defendants' discriminatory actions she suf-
fered mental anguish, emotional distress, disruption of family
and marital relationship, loss of consortium and traumatic
anxiety neurosis. Plaintiffs claimed that the discriminatory acts
of the defendants resulted in Mr. Pacheco's becoming disabled
from hypertension and anxiety and that his discharge from
employment also resulted from defendants' discriminatory acts.
Defendants moved for summary judgment on the basis that the
exclusive remedy provision of the Worker's Disability Compen-
sation Act barred plaintiff husband's action and plaintiff wife
lacked standing to bring an action based upon the violation of
her husband's civil rights. James Montante, J., denied defen-
dants' motion for summary judgment. The Wayne Circuit Court
certified to the Court of Appeals two questions relative to the
plaintiffs' right to proceed in circuit court as being controlling
questions of law. Defendants appeal by leave granted. *Held:*

1. Plaintiff husband's circuit court action under the former
fair employment practices act for damages for humiliation,
embarrassment, loss of consortium and lost wages resulting

REFERENCES FOR POINTS IN HEADNOTES
[1] 81 Am Jur 2d, Workmen's Compensation §§ 52, 53.
[1-3] 15 Am Jur 2d, Civil Rights § 261.
Recovery of damages as remedy for wrongful discrimination under
state or local civil rights provisions. 85 ALR3d 351.

from unlawful discrimination in his employment is not barred by the exclusive remedy provision of the Worker's Disability Compensation Act even where those injuries occur after a disability compensable under the Worker's Disability Compensation Act arises out of the same discriminatory acts. To hold that the Bureau of Workers' Disability Compensation is the proper forum for recovery when discriminatory employment practices cause employment injuries which culminate in disability but that the circuit court is the appropriate forum when the same discriminatory conduct does not cause physical disability would defy logic and would cancel the effect of both the former fair employment practices act and the Worker's Disability Compensation Act.

2. The civil rights provision in the Michigan Constitution is a general statement of policy but is not self-implementing, implementation by appropriate legislation being required in order to give effect to that policy statement. Neither the former fair employment practices act nor any other legislation creates in the spouse of an employee subjected to discriminatory acts the standing necessary to bring a derivative claim based upon those discriminatory acts; accordingly, summary judgment in favor of defendants with respect to the claims of plaintiff wife should have been granted.

Affirmed in part, reversed in part and remanded.

1. CIVIL RIGHTS — ACTIONS — FAIR EMPLOYMENT PRACTICES ACT — WORKERS' COMPENSATION — STATUTES.

Damages which result from unlawful discrimination against an employee, particularly those resulting from humiliation, embarrassment, loss of consortium or lost wages, may be sought in circuit court pursuant to the former Michigan fair employment practices act; such action in circuit court is not barred by the exclusive remedy provision of the Worker's Disability Compensation Act even where the discrimination induced a mental injury which culminated in a physical disability which is compensable under the Worker's Disability Compensation Act (MCL 418.131, 423.301 *et seq.;* MSA 17.237[131], 17.458[1] *et seq.*).

2. CIVIL RIGHTS — ACTIONS — CONSTITUTIONAL LAW.

The civil rights provision of the Michigan Constitution is not self-implementing and, accordingly, does not by itself provide the basis upon which to seek damages resulting from discrimination because of national origin (Const 1963, art 1, § 2).

3. CIVIL RIGHTS — ACTIONS — FAIR EMPLOYMENT PRACTICES ACT —
   DERIVATIVE CLAIMS.

> Any action for damages arising out of employment-based discrimination pursuant to the former Michigan fair employment practices act does not extend to derivative claims by an employee's spouse; in the absence of statutory authority permitting the spouse of an employee to maintain a private employment discrimination suit, such an action is not cognizable in Michigan, there being no indication that the Legislature intended to provide such persons with standing to sue.

*Gary A. Colbert,* for plaintiffs.

*Daniel G. Galant* and *Nicholas J. Wittner,* for defendants.

Amici Curiae:

*Clark, Klein & Beaumont* (by *Dwight H. Vincent, J. Walker Henry* and *Dennis J. Bonucchi),* for Michigan Manufacturers Association.

*McLellan, Schlaybaugh & Whitbeck* (by *Richard D. McLellan* and *William J. Perrone),* for Michigan State Chamber of Commerce.

*Sheldon J. Stark,* for Michigan Trial Lawyers Association.

Before: D. C. RILEY, P.J., and BASHARA and MAC-KENZIE, JJ.

D. C. RILEY, P.J. Plaintiffs filed a complaint alleging discrimination on the basis of national origin under the now-repealed Michigan fair employment practices act (hereinafter, FEPA), MCL 423.301 *et seq.;* MSA 17.458(1) *et seq.* The plaintiff husband, a security guard at General Motors Corporation, alleged that he suffered serious psychological and emotional injuries, neurosis, loss of former job pleasure, loss of consortium and great

pain and suffering as a result of employment discrimination based upon his Spanish-American origin. The plaintiff wife alleged that, as a result of defendants' discriminatory actions against her husband, she suffered mental anguish, emotional distress, disruption of the family and marital relationship, loss of consortium and traumatic anxiety neurosis.

The individual defendants in this case are security supervisors at the plant where plaintiff husband worked. The parties have stipulated that from November 29, 1974, through April 11, 1975, Mr. Pacheco was on approved medical disability leave of absence from his employment. Plaintiffs claim that he was disabled as a result of hypertension and anxiety caused by the discriminatory acts of the defendants. Further, it is stipulated that Mr. Pacheco was discharged from his employment on April 29, 1975, and reinstated on June 2, of the same year. Again, plaintiffs allege that the discharge was the result of discrimination on the basis of national origin.

Defendants filed a motion for summary judgment, challenging the trial court's jurisdiction over the matter in light of the exclusive remedy provision of the Worker's Disability Compensation Act (hereinafter, WDCA), MCL 418.131; MSA 17.237(131), and the plaintiff wife's standing to sue under FEPA. In denying defendants' motion, the trial court certified the two questions raised on appeal as controlling issues of law. By order of March 3, 1980, this Court granted defendants' application for leave to appeal from the trial court's order denying their motion for summary judgment. The two questions certified for our review, which we shall consider *seriatim,* are as follow:

I. Does the exclusive remedy provision of the Michigan Worker's Disability Compensation Act deprive the circuit court of Michigan of jurisdiction over an employee's claims of mental and physical injuries resulting from alleged unlawful employment discrimination, where such injuries are disabling, but not permanently disabling, and where various mental injuries continue after the employee returns to work?

II. Does the spouse of an employee have standing to sue the latter's employer under Article I, § 2 of the Michigan Constitution of 1963 and the Michigan Civil Rights Statutes for damages which the spouse allegedly suffered as a result of alleged unlawful employment discrimination by the employer against the employee?

I.

Defendants first argue that the exclusive remedy provision of the WDCA deprived the circuit court of jurisdiction over the plaintiff husband's claim that he suffered disabling injuries and continues to suffer nondisabling injuries as a result of alleged employment discrimination.

MCL 418.301; MSA 17.237(301) provides:

"(1) An employee, who receives a personal injury arising out of and in the course of his employment by an employer who is subject to the provisions of this act, at the time of such injury, shall be paid compensation in the manner and to the extent provided in this act * * *."

MCL 418.131; MSA 17.237(131) provides, in pertinent part:

"The right to the recovery of benefits as provided in

this act shall be the employee's exclusive remedy against the employer * * *."

At the outset we note several well-established principles, as stated recently by another panel of this Court in *Sewell v Bathey Manufacturing Co,* 103 Mich App 732, 736-737; 303 NW2d 876 (1981):

"It is beyond question that, when an injury is sustained which is compensable under the Worker's Disability Compensation Act of 1969, the exclusive-remedy provision of the act bars any common-law tort cause of action by an employee against his employer arising therefrom. *Milton v Oakland County,* 50 Mich App 279, 283; 213 NW2d 250 (1973), *Broaddus v Ferndale Fastener Division, Ring Screw Works,* 84 Mich App 593, 597-598; 269 NW2d 689 (1978), *lv den* 403 Mich 850 (1978). An injury which is 'a personal injury arising out of and in the course of [an injured party's] employment' is compensable under the act. MCL 418.301; MSA 17.237(301), *Kissinger v Mannor,* 92 Mich App 572, 575; 285 NW2d 214 (1979). Personal injuries for which the act provides a remedy include both physical and mental injuries suffered on account of employment. *Deziel v Difco Laboratories, Inc (After Remand),* 403 Mich 1; 268 NW2d 1 (1978), *Kissinger, supra,* 575.

"It is also beyond peradventure that the question of whether the act applies to a particular injury, *i.e.;* whether an injury arose out of and in the course of a worker's employment (and thus is compensable under the act), is a question to be resolved in the first instance exclusively by the Bureau of Workmen's Compensation. *Szydlowski v General Motors Corp,* 397 Mich 356, 358-359; 245 NW2d 26 (1976), *St Paul Fire & Marine Ins Co v Littky,* 60 Mich App 375, 377-378; 230 NW2d 440 (1975), MCL 418.841; MSA 17.237(841)." (Footnotes omitted.)

Our analysis begins with a review of *Stimson v Michigan Bell Telephone Co,* 77 Mich App 361; 258

NW2d 227 (1977), since that was the first case to discuss the effect of the exclusivity bar of the WDCA in the context of employment discrimination and since defendants place principal reliance on that decision to support their claim that the trial judge erred in denying their motion.

In *Stimson,* plaintiff filed suit under the FEPA, charging defendant with discriminating against her on the basis of sex with regard to grade and wage promotions and her eventual discharge. Plaintiff alleged that, because of the discrimination she encountered, she suffered an acute nervous breakdown, required hospitalization, was unable to secure employment and experienced embarrassment, humiliation and a loss of esteem among her peers. Concurrently, plaintiff filed a claim with the Bureau of Workers' Disability Compensation [hereinafter, bureau]. Defendant moved for partial summary judgment on the ground that plaintiff's claims of nervous breakdown, embarrassment, humiliation and loss of esteem were barred by the exclusive remedy provision of the WDCA. The trial court denied defendant's motion and this Court granted defendant leave to appeal.

Relying heavily upon Professor Larson's workmen's compensation treatise, the Court said that not only must the elements of the tort be examined in order to determine whether the suit is barred by the exclusive remedy provision but that the damages claimed must also be reviewed. The Court also said that a civil action against an employer is not barred completely because several of the injuries alleged are those within the coverage of the compensation act. Recovery is, however, precluded for injuries covered under the compensation act. With respect to the facts before it, the Court concluded as follows:

"Plaintiffs' complaint in the present case alleges a cause of action which generally concerns a type of injury outside the scope of the Workers' Disability Compensation Act. The mental injuries allegedly suffered by plaintiff, however, are not merely incidental to the violation of her civil rights. They culminated in a disabling condition for which compensation was available. Plaintiffs' ability to recover for Mrs. Stimson's nervous breakdown, embarrassment, humiliation and loss of esteem among her peers, therefore, is barred by MCLA 418.131; MSA 17.237(131). Plaintiff's discharge and her inability to obtain grade and wage promotions, however, if proven to have resulted from sexual discrimination, are injuries for which the act provides no remedy. With regard to these injuries, plaintiff is entitled to a trial on the merits." *Stimson, supra,* 369. (Footnotes omitted.)

Another decision of significance to our inquiry is *Freeman v Kelvinator, Inc,* 469 F Supp 999 (ED Mich, 1979). *Freeman* involved a class action suit by employees against their employer for alleged race discrimination. Before the court was a defense motion to deny a proposed amendment to the complaint to include therein a prayer for relief under the Elliott-Larson Civil Rights Act. MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.* Defendant contended that the damages sought by plaintiffs for the indignity of discrimination, humiliation and the invasion of their right not to be discriminated against were barred by the exclusivity bar of the WDCA.

In an exhaustive and well-reasoned analysis of Michigan law on the subject, Judge Feikens first traced the historical origins of both the WDCA and the Michigan Civil Rights Act. Relying upon *Milton, supra,* he noted that:

"The MWDCA was designed to redress 'industrial injuries' sustained from 'trade risks relating to the

industry'. *Milton v Oakland County [supra]." Freeman, supra,* 1000.

Judge Feikens continued:

"Being a remedial statute, [the WDCA] has been broadened by interpretation to provide benefits to workers whose injuries are intangible mental injuries—even when they are the result of nonphysical causes. But it would be wrong to plunge headlong to the conclusion that all 'injuries' in any form whatsoever are recoverable only under the MWDCA. Just because mental damages from accidental industrial injuries are compensable does not mean mental injuries from other sources must unthinkingly be barred by the exclusivity provision." *Id.* (Citations omitted.)

Judge Feikens then observed that the Civil Rights Act, as compared to worker's compensation legislation, was designed to redress a completely separate and distinct problem: discrimination. Amplifying this point he noted that such legislation;

"is designed to abolish the smallness of mind that clings to pernicious stereotypes founded not on fact but upon historical misconceptions and fear. Its purpose is to guarantee equal opportunity in the market place and redress the injuries that those in protected groups suffer". *Id.*

On this point, Judge Feikens concluded:

"The source of defendant's misconception is perhaps its belief that the injury which flows from discrimination is akin to mental injuries sustained by workers from compensable sources. It is not. The discrimination injury is unique. Its source is deliberate or inadvertent disregard by the employer of the fundamental rights of his employees. MCLA § 37.2101, *et seq.* Likewise, though the victim of discrimination may feel embarrassment, humiliation, outrage and disappointment,

thus likening the injury to those of 'dignitary' torts such as defamation, it would be wrong to equate the two." *Id.*

As so adeptly stated in *Freeman,* we cannot blind ourselves to the fact that the WDCA and FEPA are complete and self-contained legislative schemes addressing discrete problems. As noted in *Freeman:*

"There is no indication whatever that the discrimination law was to have an exception for injuries arguably redressed by the MWDCA, nor is there any indication that the MWDCA was impliedly expanded when the Civil Rights Act was passed." *Id.*

That the two pieces of legislation at issue in the instant case are designed to remedy distinct problems was recognized by the *Stimson* Court. The real significance of *Stimson,* however, lies in its discussion concerning damages. In *Freeman,* Judge Feikens reached the following conclusion concerning the scope of this Court's holding in *Stimson:*

"Thus, the court's holding was that where humiliation and embarrassment *culminate* in disability, then worker's compensation is the exclusive remedy. The court did not address the question of exclusivity when injury *does not culminate* in disability. And, indeed, all the indications in the case are that without disability, exclusivity would not apply." *Freeman, supra,* 1002. (Emphasis in original.)

He added:

"[I]t was the physical disability for which Plaintiff Stimson claimed that led the court to hold the MWDCA her exclusive remedy. I do not believe the court intended its holding to go beyond that to encompass cases where only mental distress damages are sought." *Id.*

Another pertinent case from this Court is *Milton, supra.* In *Milton,* plaintiff instituted suit against his employer alleging that his employment rights secured under a merit system had been violated. The pertinent facts and holding of *Milton* were summarized in *Freeman, supra,* 1001, as follows:

"[Plaintiff] sought damages for mental anxiety and for the disabling nervous condition he said resulted. Defendant argued that the MWDCA provided the plaintiff's exclusive remedy. The court concluded that only a 'cursory review' of the MWDCA was necessary to reject defendant's argument insofar as it pertained to the mental anguish resulting from defendant's alleged violation of plaintiff's merit system rights. Conceding that recovery for disability could be had only under the MWDCA, the court said, '[i]t is beyond question that plaintiff's claims [for mental distress for the violations of the merit system] if proved, cannot be classified as industrial injuries within the meaning of the Workmen's Compensation Act. While plaintiff's alleged injuries for muscle fatigue and mental depression fall within the act and are in that respect his exclusive remedy, plaintiff has a right to judicial review of his claims for additional compensation, improper discharge, and violation of the merit system rules.' "

*Moore v Federal Department Stores, Inc,* 33 Mich App 556; 190 NW2d 262 (1971), sheds further light on this issue. In *Moore,* plaintiff alleged that she was falsely accused and imprisoned by her employer for failing to ring up a sale. Plaintiff was a sales clerk at one of defendant's stores. She brought an action for false imprisonment, seeking damages for humiliation, embarrassment, and nervous distress. Plaintiff appealed from an order granting defendant summary judgment on the grounds that plaintiff's sole remedy was at the Workers' Disability Compensation Bureau.

On appeal this Court reversed, holding that an action for false imprisonment does not seek recovery for an injury that is compensable under the act:

"The Act has been interpreted to encompass physical and mental injuries which arise out of and in the course of one's employment. However, the gist of an action for false imprisonment is unlawful detention irrespective of any physical or mental harm. We do not feel, therefore, that the plaintiff has suffered the type of personal injury covered under the Act." (Footnotes and citations omitted.) *Id.,* 559.

The Court also observed:

"It is plaintiff's claim that her humiliation, embarrassment, and deprivation of personal liberty are not the type of 'personal injury' contemplated in the above quoted section [of the WDCA]. We agree." *Id.*

Our analysis of the aforementioned cases leads us to the following conclusion. To the extent Mr. Pacheco suffered periods of physical disability, the WDCA is his exclusive remedy. *Stimson, supra.* It would appear, however, that this question is moot since the stipulation of facts indicate that during his periods of medical disability Mr. Pacheco was paid benefits by a third-party insurance carrier under the General Motors group insurance plan. Further, we are of the opinion that those damages which allegedly resulted from the alleged unlawful discrimination by defendants, particularly those resulting from humiliation, embarrassment, loss of consortium, and lost wages, are compensable in circuit court and should not be barred by the exclusivity clause of WDCA. This is true not only of those injuries occurring *prior* to plaintiff's dis-

ability but also as to those occurring *after* his disability.

To the extent *Stimson* may be interpreted as holding that, when mental injuries arising from discrimination culminate in a physical disability claim (which is compensable under the WDCA), the prior claims for the mental suffering are "merged" with the physical disability claim, we disagree. Such a result, we believe, is inconsistent with prior Michigan law in this area. See *Moore, supra, Milton, supra.* We can find no logic in holding that the bureau is the proper forum for recovering compensation when discriminatory employment tactics cause emotional injuries which culminate in disability but that the circuit court is the appropriate forum when the same discriminatory conduct does not cause physical disability. In either case, the alleged *cause* of the injuries stemmed from the same source: intentional employment discrimination. This is the very conduct the FEPA was designed to protect against. It is *not* the type of conduct the WDCA was designed to protect against. To hold otherwise, would cancel two remedial statutes. *Freeman, supra,* 1004.

Although in the usual case the initial determination of whether the WDCA applies to a particular injury is a question to be resolved in the first instance by the bureau, *Szydlowski, supra,* due to the facts of the instant case, we believe it would be inappropriate to remand this matter to the bureau, since, as we have said, it appears that Mr. Pacheco has already been compensated for the periods of time when he was on medical disability.

## II

The second issue raised on appeal is one of first

impression in this state. Mrs. Pacheco is seeking recovery for injuries she allegedly suffered as a result of the purported employment discrimination by the defendants against her husband. Her suit is based on two grounds: (1) Const 1963, art 1, § 2, and (2) the FEPA.

Const 1963, art 1, § 2 provides, in pertinent part:

"No person shall be denied * * * the enjoyment of his civil * * * rights or be discriminated against in the exercise thereof because of * * * national origin. The legislature shall implement this section by appropriate legislation."

It is evident that this constitutional provision is not self-implementing and that it does not provide a source of standing for Mrs. Pacheco's claim. The provision states no more than a general policy of this state which must be implemented by appropriate legislation. See *Pompey v General Motors Corp*, 385 Mich 537; 189 NW2d 243 (1971). Accordingly, Mrs. Pacheco's claim rests upon the provisions of the FEPA, a statute which implemented the constitutional provision.

Section 3 of the FEPA provided in part as follows:

"It shall be an unfair employment practice: (a) For any employer, because of the race, color, religion, national origin or ancestry of any individual, to refuse to hire or otherwise to discriminate against him with respect to hire, tenure, terms, conditions or privileges of employment, or any matter, directly or indirectly related to employment, except where based on a bona fide occupational qualification." MCL 423.303; MSA 17.458(3).

In *Pompey, supra*, the Supreme Court specifi-

cally held that damages for employment discrimination were available under the FEPA. The Court emphasized, however, that the right to redress employment discrimination had to be based upon a statutorily created right:

"We hold that plaintiff can maintain a civil damage action for redress of his statutorily created right to be free from discrimination in private employment, and that this remedy may be pursued in addition to the remedial machinery provided by statute." *Id.,* 560.

In the instant case, Mrs. Pacheco does not claim that General Motors discriminated against her. Rather, her claim for damages is derivative in nature. In the absence of statutory authority for an employee's spouse to maintain a private employment discrimination suit, we hold that Mrs. Pacheco's claims must be dismissed from the action.

Finally, to the extent that the standing requirements of the FEPA are viewed as ambiguous, we note that the primary objective of statutory construction is to ascertain and give effect to legislative intent. *Melia v Employment Security Comm,* 346 Mich 544, 562; 78 NW2d 273 (1956). Our reading of the statute persuades us that the Legislature did not intend that the spouse of a victim of discrimination has standing to sue under the statute in question for damages resulting to her from that discrimination.

Affirmed in part, reversed in part and remanded to circuit court for a trial on the merits.

No costs, a statutory interpretation being involved.